*Law Office of Phillip A. Austin*
Bar No. 5694
215 N. Robson Street
Mesa, AZ 85201
Telephone: (480) 644-0506
Fax: (480) 644-9256
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Enriquez,<br>    Plaintiff,<br>vs.<br>City of Scottsdale; a Municipality within the State of Arizona, Jeffery Nichols, personally and in his capacity as Supervisor of the City of Scottsdale,<br>    Defendants. | NO.<br><br>COMPLAINT<br>(Jury Trial Demanded) |

Plaintiff, Dennis Enriquez, through undersigned counsel, alleges the following:

## I. JURISDICTION

1. This is an action seeking damages and equitable relief for race, sex and national origin discrimination, retaliation and other misconduct brought by Plaintiff against City of Scottsdale and other defendants, pursuant to the 14th Amendment of the U. S. Constitution, the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985(3); Title VII of the U. S. Civil Rights Act of 1964, amended 1991, 42 U.S.C. 2000e. This Court has jurisdiction over this action under 28 U.S.C. §§1331 and 1343(4), and over state law claims pursuant to the doctrine of pendent jurisdiction.

2. Venue is proper in the District of Arizona under 28 U.S.C. §1391(b) as all acts alleged occurred in this District.

## II. PARTIES

3. Plaintiff, an adult Hispanic male, resides in Maricopa County, State of Arizona, and is a former employee of the Defendant, City of Scottsdale

4. Defendant, City of Scottsdale, is a body politic.

5. At all times material to this complaint, Defendant, City of Scottsdale, has been engaged in an industry affecting commerce and has at least fifteen

employees for each working day in at least twenty calendar weeks of this year or last year.

6. At all times material to this Complaint, Jeffery Nichols was the employee of the City of Scottsdale and as department head, was Plaintiff's supervisor.

## III. MATERIAL FACTS

Plaintiff Employment History with Defendant, City of Scottsdale

7. Plaintiff began his employment with the City in 1990, as a Water Quality Specialist. His duties included coordination of the USEPA required pretreatment program, as well as, the performance of technical tasks associated with water, wastewater, and storm water quality.

8. Based upon his performance, work ethic, and dedication Plaintiff strategically advanced his career several times during his 26-year tenure. Those advancements include:

a. In 1995 Plaintiff applied for and was promoted to Recycling Coordinator where his role was to create a comprehensive marketing and master plan for the implementation of Scottsdale's citywide Curbside Recycling Program. This large-scale revenue generating/cost avoidance initiative was implemented on schedule and below budget; it has since successfully served Scottsdale residents and businesses for over 22 years.

b. In 1996, Plaintiff was appointed to Environmental Coordinator where he continued to serve as the recycling guru for the City. He also initiated partnerships with Scottsdale Community College, managed the Adopt-A-Mile program, and served as staff liaison to the Environmental Quality Advisory Board and Scottsdale Pride Committee.

c. In 2002, Plaintiff was promoted to the position of Planning Administration Manager where he supervised a team of 14 staff members, who were responsible for public notification compliance serving the Mayor and Council, Planning Commission, and Development Review Board.

d. In 2008, Plaintiff was promoted to Senior Development Services Manager where he managed a team of 23 staff. His team provided one-stop development services to include over-the-counter plan review permit issuance, records management, cashiering, and inspection scheduling.

e. In 2011, Plaintiff was promoted to Customer Service Director where he managed a team of 58 staff responsible for tax and licensing, utility billing, remittance processing, revenue recovery, meter reading, and passport services.

f. In 2013, until his retirement in September 2016, his title was changed to Business Services Director by the previous City Treasurer David N. Smith (former City Councilman) who entrusted Plaintiff with the additional duties of overseeing the Tax Audit team while transitioning the Meter Reading Team to the Water Resources Department.

g. Shortly after this period, that Plaintiff led the City's efforts to transfer licensing operations to the Arizona Department of Revenue (ADOR) in accordance with state requirements. Plaintiff effectively led this critical operational change ultimately reducing projected financial losses, maintaining service delivery expectations, and producing a $1.6M in vacancy savings.

9. Plaintiff' performance evaluations and ability to advance consistently throughout his tenure reflected that he exceeded expectations. In addition to the above-delineated promotional record based upon his excellent performance and service to the City of Scottsdale, Plaintiff received the Governor's Pride in Arizona Award, Valley Forward Crescordia Award, Valle de Sol Hispanic Business Leader Recognition, the Bill Donaldson Award, the highest recognition awarded to a city employee, multiple Superior Performance Awards, and countless letters of appreciation by customers served.

10. Plaintiff was also a long term active member of Scottsdale's Employee Diversity Advisory Committee, served two terms as Co-Chair of Scottsdale's United Way Campaign (aka Scottsdale Employee's Charitable Choice Campaign), was a frequent volunteer at Vista Del Camino and Adapted Services and participated with three Citizen Academies (i.e. Police, Fire, and Water) as well as an extensive list of volunteer community service.

11. After a successful 26-year tenure with the City and 30 year career in public service, Plaintiff was eligible for normal retirement through the Arizona State Retirement System (ASRS) in August 2016. Leading up to his retirement eligible date, and to reduce impacts to the City, Plaintiff initiated several discussions with Defendant, Mr. Jeffery Nichols, City HR Department staff, and ASRS staff as early as March 2016. Discussions included completing all appropriate documents for retirement to sharing e-

mails with Defendant Nichols and HR staff related to business continuity and working well beyond retirement.

12. In August of 2016, Defendant Nichols, with support by then Acting City Manager Brian Biesemeyer, approved a one-year contract effective September 2016 allowing Plaintiff to continue the critical work of transitioning licensing to ADOR post retirement.

13. During this one-year period, Defendant Nichols left the full time City Business Services Director position, previously held by Plaintiff, vacant.

14. On March 13, 2017, Plaintiff suggested to Defendant Nichols that he eliminate the Business Services Director contract and appoint him (Plaintiff) to the full-time, vacant Business Services Director. This recommendation would result in an approximate $46k hard dollar cost savings.

15. Defendant Nichols asked Plaintiff to gather limited information about the cost saving idea, but not to move forward without his direction. Defendant Nichols did ultimately agree to contract with Plaintiff to serve a Business Services Director for a one-year period.

Mr. Jeffery M. Nichols

16. Prior to his employment for Defendant City of Tempe, Defendant Nichols was employed by the City of Tempe from October 1984 to May 2001. During his last 10 years in Scottsdale, Defendant Nichols was the Senior Management Assistant within the Public Works Department.

17. During this period of his career 9 Hispanic male Public Works employees filed a successful lawsuit of discrimination against the City of Tempe.

18. The basis of this well documented litigation was discrimination, hazing and harassment by Public Works Department Leadership which included Defendant Nichols. As a result of the lawsuit many of the Public Works Department Supervisors, the HR Director, and City Manager were removed from their positions. Defendant Nichols voluntarily resigned from his position in May 2001.

19. Between September 2001 to present, Defendant Nichols was employed by the Defendant City of Scottsdale on three separate occasions, in three different capacities. Note: Scottsdale's Human Resources Department conducted three different recruitment/background checks each time failing to identify or address Defendant Nichols' inclusion in the City of Tempe discrimination case.

20. Defendant Nichols originally joined Defendant City of Scottsdale's work force in September 2001. After working as a Senior Budget Analyst for 3 years and 3 months, Defendant Nichols left the City in December 2004.

21. Defendant Nichols returned to Defendant City of Scottsdale as the Accounting Director in March 2010, and retired from the City in October 2011, or 1 year and 7 months later.

22. Defendant Nichols then returned post-retirement 2 years later in October 2013, when the City Mayor and Council appointed Defendant Nichols to City Treasurer and has served in this position ever since.

Business Services Director Recruitment

23. On July 13, 2017, while Plaintiff was serving in the position of Business Services Director on a contract basis, the Defendant City of Scottsdale issued an announcement soliciting applications for the full-time city position of Business Services Director with an annual salary range of $89,481.66-$129,771.20.

24. Defendant Nichols understood the monetary value this would bring to Plaintiff as Defendant Nichols himself had retired from ASRS in October, 2011 and returned to Defendant City of Scottsdale as a full-time employee in October, 2013.

25. The Class Specification Bulletin for the position of Business Services Director described in the Essential Functions is as follows:

- Works in partnership with City staff supporting the business needs of the organization and community.
- Oversees all Business Services Department operations which include Tax Audit, Tax and License, Passports, Remittance Processing, Revenue Recovery and Utility Billing.
- Present written reports and correspondence to the City Council on a wide variety of department topics and issues.
- Investigates and resolves escalated customer complaints.
- Prepares letters or memos in response to customer complaints and inquiries.
- Conducts billing related hearings when necessary.
- Encourage cross-division communication, cooperation and coordination.
- Develops or improves department programs and policies, structure, and workload efficiency models.

- Plans, approves and manages the Department budget.
- Works in cooperation with the City Attorney's Office to negotiate Business Department settlements.
- Designated authority by City ordinance to approve or deny taxpayer or utility customer request for credit refunds, fee waivers, alternative payment plans, license applications, or general business services.
- Supervises employees and coordinates personnel-related activities to include, but not limited to: training, approving work schedules, recommending/approving personnel actions, coaching and counseling, establishing performance goals, and writing performance valuations.
- Directs department accomplishments toward organizational objectives
- Prepares various statistical reports serving the department or division.
- Oversees revision to computerized systems supporting department operations.

26. Defendant Nichols, as the supervisor and hiring authority for the position, established a selection process whereby highest ranked applicants would be interviewed. The first round interview panel, selected by Defendant Nichols, included four members who interviewed 10 applicants. Plaintiff and 3 other applicants, Lisa Bredeson, Heather Pfieffer, and Darcy Nichols were recommended by the first panel to be interviewed by a second panel comprised of Brad Hartig (IT Director), Bill Murphy (Community Services Director), and Jeff Nichols.

27. Both the first and second interview panels ranked the applicants in the same order to wit: Lisa Bredeson-First, Dennis Enriquez-Second, Heather Pfeiffer-Third, Darcy Nichols-Fourth. The position was offered to Ms. Bredeson who declined for salary reasons.

28. Contrary to his assertion that he selected the most qualified of the remaining applicants, Defendant Nichols, without justification, skipped over the next two ranked candidates (Plaintiff and Ms. Pfeiffer) and selected the candidate ranked lowest by the first and second interview panel, Darcy Nichols.

29. Neither the scoring sheets nor any other City document support Defendant's position as delineated in its position statement that the second interview panel found Ms. Nichol's answers to be analytical, clear and demonstrative of her leadership qualities. In fact, after Ms. Bredeson declined the position, Mr. Jeff Nichols,

unilaterally and not the interview panel, decided to offer the position to Ms. Darcy Nichols.

30. On July 25, 2017 HR Analyst Ronald Fasano sent an e-mail to Defendant Nichols stating that he is "not impressed with the pool of candidates" which included Ms. Darcy Nichols application.

31. On August 18, 2017 HR Analyst Ronald Fasano sent an e-mail to Defendant Nichols providing "options for the next round" of interviews per HR policies via a hiring plan. Defendant Nichols failed to use the presented options.

32. Brian Biesemeyer, who was selected by Defendant Nichols to serve on the first panel interviews, heard the Defendant Nichols state as early as September 2016 that he would never rehire a retiree. With this biased perspective, Mr. Biesemeyer was intentionally the only person from the first panel invited by Defendant Nichols to share his comments about candidate selection.

33. Neither the first or second interview panel included HR Department representation.

34. It should be noted that Plaintiff applied for the Business Services Director position (previously titled Customer Service Director) in 2011 where he was selected out of a pool of 180 applicants through a diverse interview panel process that included HR staff representation. By comparison, the 2017 Business Services Director process led by Defendant Nichols had a pool of 52 applicants without a diverse interview panel or HR staff representation.

Disparate Treatment

35. Plaintiff' belief that he was the victim of disparate treatment is based upon the following considerations:

a. First, Plaintiff successfully performed the essential functions of Business Services Director for 6 years. His Performance Evaluations reflected that he exceeded expectations by which Defendant Nichols and then Acting City Manager Brian Biesemeyer offered Plaintiff a 1-year contract post ASRS retirement eligibility. While Plaintiff had proven trust and credibility by Defendant Nichols and Mr. Biesemeyer has signed in a contract dated early September 2016, Plaintiff was blatantly passed over for the full time City position by not one but two white female candidates of far less qualifications. Note: At the time of recruitment all other direct reports to Defendant Nichols were white female.

b. Second, Plaintiff' supervisor, Defendant Jeff Nichols, failed to provide Plaintiff the same opportunity as he provided a similarly situated Non-Hispanic female (Gina Kirklin), who like Plaintiff was qualified for the position of Enterprise and Finance Director, but unlike Plaintiff, was appointed to that position without being required to submit to an interview process. Mr. Biesemeyer was part of this hiring approval.

c. Third, on May 15, 2018 during an Ethics Investigation as requested by Plaintiff to Defendant City of Scottsdale regarding Defendant Nichols questionable recruitment and selection practices for the Business Services Director position, Defendant Nichols claims that there is no program to rehire retirees. HR Director Brown, who oversaw the internal investigation, supported Defendant Nichols claim, however, in a public records request (#17-013541 dated 8/7/18) she contradicts her own response by stating that there is not only a program to rehire retirees but HR has a special retirement code that they use in their system.

d. Fourth, Plaintiff further requested Defendant City of Scottsdale to answer as to whether he is eligible for rehire or not post retirement. On 8/7/18 Deputy City Attorney Sherry Scott responds in a letter to Plaintiff with: "You are eligible for rehire".

e. Fifth, Defendant City of Scottsdale records reflect that many current retired-rehired employees took advantage of their ASRS normal retirement eligibility since as early as 2009. Of those listed current retired-rehired employees - none are Hispanic. This includes David Schaaf (deceased 3/2019), Annette Grove, John Krusmark, Amy Foster, Marina Gandy, Dave Meinhart, and Jan Horne. Defendant Nichols retired-rehired from the City of Scottsdale.

f. Sixth, Defendant Nichols and Ms. Brown failed to follow HR Department policies for recruitment and selection which were implemented to prevent discrimination and promote a standardized and fair process by which all employees are to follow. The City Attorney and City code define Charter Officers like Defendant Nichols to be an employee.

g. Seventh, Defendant Nichols failed to follow HR Department policies for hiring (SRC Sec.14-41, AR365, and Standard Operating Procedures 5.1), which were implemented to prevent discrimination and promote fair recruitment. Specific examples of violated codes or policies include:

    i. Defendant Nichols failed to follow a written hiring plan which should have included a recruitment and selection strategy.

ii. Defendant Nichols admitted that he refrained from using job-specific questions for the interview process, stating that it would have been unfair to other candidates.

iii. Defendant Nichols selected three white males to serve as the second round interview panel as opposed to having a diverse panel of experts. Defendant Nichols further hand selected Brian Biesemeyer, who according to Defendant Nichols would not rehire a retired employee. Note: With an organization of approximately 2,500 employees, Defendant Nichols had many other opportunities to produce a diverse panel of experts -- particularly adding individual unbiased experts of other genders, races or national origins.

iv. HR Director Brown per City Code failed to question Defendant Nichols, Ronald Fasano, or the HR recruitment process as related to the outcome of the Business Services Director recruitment. Specifically, she failed to question how a former Hispanic employee (Plaintiff) with his impeccable service record in the position being recruited for was not the successful candidate.

h. Eighth, Defendant Nichols and his hand-selected panel failed to recommend' or 'not recommend' the four candidates which would have left no doubt as to the actual recommendations. Contrary to the City's position, after Ms. Bresedon refused the position, there is no evidence that the panel concluded that Ms. Darcy Nichols was the most qualified of the remaining applicants.

i. Ninth, even though Mr. Hartig was specifically chosen by Defendant Nichols for his ability to be fair, Defendant Nichols disregarded the IT Director's [Brad Hartig] suggestion in an August 24, 2017 email to provide a few job specific questions for assessing the qualifications of candidates.

j. Tenth, due to Defendant Nichols' failure to ask job specific questions, he not only deprived Plaintiff of fair treatment, but further prevented another qualified internal candidate, Jaqueline Denlinger (Hispanic/female and Business Services Manager who reported to Plaintiff) from moving forward in the recruitment process.

k. Eleventh, despite Defendant Nichols' assertion that the successful candidate, Darcy Nichols "rose to the top", the reality is that Mrs. Nichols was actually ranked last by the second interview panel, which included Mr. Jeff Nichols himself.

l. Twelfth, a review of Ms. Nichols' qualifications reveal that her experience fails to fulfill the essential elements of the position of Business Services Director as delineated by the Class Specifications Bulletin. Factually Ms. Nichols' qualifications failed to equal or exceed those of Plaintiff for the position demonstrated a $1.6M vacancy saving through effective leadership and business management of day-to-day operations while serving as the Business Services Director as a full time employee and on contract..

m. Thirteenth, Defendant Jeff Nichols' work calendar over the course of two years reflects that he enjoys a close personal relationship with the selected applicant, Mrs. Nichols and her husband, Scottsdale Police Commander, Joseph Nichols. This appearance of impropriety, if not an actual conflict of interest; should have prompted Defendant Jeff Nichols to recuse himself from the process as he did during the first interview panel.

n. Fourteenth, evidence supports the assertion that Defendant Jeff Nichols has anti-Hispanic bias. He was in a management position at the City of Tempe Public Works Department during the time period that Hispanic employees successfully litigated their claims against City of Tempe Public Works management. Court records include Defendant Nichols in the management group who, not only failed to prevent discrimination in the workplace but actually contributed to discriminatory, hazing and/or harassing behaviors.

36. The City also knew or should have known of the discrimination against Hispanics (including discrimination against Plaintiff) because it pervaded the workplace at the Defendant City of Scottsdale since the early 2000's.

37. The Defendant City of Scottsdale, Defendant Jeffery Nichols, has a pattern of allowing gender discrimination in the workplace since the early 2000's to as recent as 2019.

38. Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits government employers (including the City of Scottsdale) and government agents (including the individual Defendants) from discriminating against public employees on the basis of their race and national origin.

39. Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibit government agencies (including the City of Scottsdale) and government agents (including the individual Defendants) from

retaliating against public employees who complained of gender discrimination in the public workplace.

40. Plaintiff timely files a charge of discrimination against Defendant City of Scottsdale with the U. S. Equal Employment Opportunity Commission ("EEOC"). On March 19, 2019, the U.S. Department of Justice issued Plaintiff a Notice of his Right to Sue Defendant City of Scottsdale.(Attached and incorporated herein as Exhibits A and B)

## COUNT ONE
## EMPLOYMENT DISCRIMINATION AGAINST DEFENDANT CITY OF SCOTTSDALE
### (42 U.S.C. §2000e)

41. Plaintiff hereby realleges and incorporates all allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42. The actions of Defendant City of Scottsdale against Plaintiff constitutes a violation of Title VII of the U. S. Civil Rights Act of 1964, as amended 1991, specifically 42 U.S.C. §2000e.

43. As a direct and proximate result of the conduct of Defendant City of Scottsdale, Plaintiff has suffered injury including, but not limited to, economic loss, emotional distress, mental anguish, humiliation and embarrassment, loss of enjoyment of life and deprivation of his rights to equal employment opportunities.

## COUNT TWO
## RETALIATION AGAINST DEFENDANT CITY OF SCOTTSDALE
### (42 U.S.C. §2000e-3.)

44. Plaintiff hereby realleges and incorporates all allegations contained in paragraphs 1 through 40 as if fully set forth herein.

45. The actions of Defendant City of Scottsdale against Plaintiff constitute retaliation in violation of Title VII of the U. S. Civil Rights Act of 1964, as amended 1991.

46. As a direct and proximate result of the conduct of Defendant City of Scottsdale, Plaintiff has suffered injury including, but not limited to, economic loss,

emotional distress, mental anguish, humiliation and embarrassment, loss of enjoyment of life and deprivation of his rights to equal employment opportunities.

## COUNT THREE
## EMPLOYMENT DISCRIMINATION AGAINST DEFENDANTS CITY OF SCOTTSDALE AND JEFFERY NICHOLS
## (42 U.S.C. §1981)

47. Plaintiff hereby realleges and incorporates all allegations contained in paragraphs 1 through 40 as if fully set forth herein.

48. The actions of Defendants City of Scottsdale and Jeffery Nichols constitutes a violation of the U.S. Civil Rights Act of 1866, 42 U.S.C. §1981.

49. As a direct and proximate result of the conduct of Defendants City of Scottsdale and Jeffery Nichols, Plaintiff has suffered injury including, but not limited to, economic loss, emotional distress, mental anguish, humiliation and embarrassment, loss of enjoyment of life and deprivation of his rights to equal employment opportunities.

## COUNT FOUR
## VIOLATION OF THE PLAINTIFF'S RIGHT TO EQUAL PROTECTION
## (THE FOURTEENTH AMENDMENT OF U. S. CONSTITUTION 42 U.S.C. §1983)

50. Plaintiff hereby realleges and incorporates all allegations contained in paragraph 1 through 40 as if fully set forth herein.

51. Defendants' actions against Plaintiff constitute violations of the Fourteen Amendment of the U. S. Constitution.

52. All Defendants through their conduct failed to action to prevent the discriminatory treatment set forth above.

53. All Defendants through their conduct condoned and allowed the discriminatory conduct described above to become institutionalized and condoned.

54. Defendants conduct described above evidences a policy and practice of racial and sexual discrimination.

55. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered injury including but not limited to economic loss, emotional distress, mental

anguish, humiliation and embarrassment, loss of enjoyment of life and deprivation of his rights due to illegal retaliation.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A. That this court issue a declaratory judgment, declaring the actions complained of herein to be a violation of 42 U.S.C. §2000e, 42 U.S.C. 1981, 42 U.S.C. §§1983 and 1985 and Fourteenth Amendments to the Constitution of the United States;

B. That Defendant be ordered to take appropriate affirmative acts to insure that the actions complained of herein are not engaged in again by Defendants or any of its agents and to place Plaintiff in the position he would currently enjoy but for the unlawful discrimination or retaliation against any person;

C. The actual damages be awarded to Plaintiff and against all Defendants.

D. That compensatory damages be awarded to Plaintiff and against all Defendants;

E. That punitive damages be awarded against the all Defendants;

F. That Plaintiff be awarded his attorney's fees and costs pursuant to 42 U.S.C. §1988, 41 U.S.C. §2000-5(K) and any other applicable law; and,

G. That Plaintiff be awarded all other relief that this court deem just and proper under the circumstances.

## VIII. JURY DEMAND

1. Plaintiff demands trial by jury

DATED this 5 June 2019.

                                          s/Phillip A. Austin
                                          Phillip A. Austin
                                          Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electron Filings.

s/L. Austin

**EXHIBIT A**

| CHARGE OF DISCRIMINATION Page 1 of 1<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | AGENCY<br>☒ FEPA<br>☐ EEOC | CHARGE NUMBER |
|---|---|---|

## Arizona Attorney General's Office, Civil Rights Division and EEOC
*State or Local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* <br> Mr. Dennis Enriquez | | HOME TELEPHONE NO. *(Include Area Code)* <br> 602-570-1262 |
|---|---|---|
| STREET ADDRESS <br> 8656 E El Charro Lane | CITY, STATE AND ZIP CODE <br> Scottsdale, AZ 85250 | DATE OF BIRTH <br> 11/02/1966 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICE SHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME. *(If more than one, list below.)*

| NAME <br> City Of Scottsdale | NUMBER OF EMPLOYEES/MEMBERS <br> Cat. D | TELEPHONE NUMBER *(Include Area Code)* <br> 480-312-3111 |
|---|---|---|
| STREET ADDRESS <br> 3939 N Drinkwater Blvd. | CITY, STATE AND ZIP CODE <br> Scottsdale, AZ 85251 | COUNTY <br> Maricopa |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* <br> ☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE <br> ☐ RETALIATION ☐ DISABILITY ☐ GENETIC TEST RESULTS ☐ OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE <br> EARLIEST *(ADEA/EPA)* LATEST*(ALL)* <br> 09/11/2017 09/14/2017 <br> ☐ Continuing Action |
|---|---|

EXPLAIN THE PARTICULARS OF WHAT TOOK PLACE *(If additional space is needed, attach extra sheet(s))*:

I. **PERSONAL HARM:** I was subject to unequal treatment based on my race and gender.

II. **RESPONDENTS REASON FOR ADVERSE ACTION:** None.

III. **DISCRIMINATION STATEMENT:** I believe Respondent discriminated against me because of my race, Hispanic, and sex, Male, in violation of the Arizona Civil Rights Act, as amended, and Title VII of the Civil Rights Act of 1964, as amended. The particulars are:

A. On or about September 2016, I began my employment with Respondent as a contracted Business Services Director. Prior to this date, I worked in this position for five years as a fulltime employee. My work performance has always been satisfactory. The position was held vacant during my contracted employment and was offered as a fulltime position on July 17, 2017.

B. On or about August 30, 2017, I interviewed for the second time with Jeff Nichols, City Treasurer, and two other white Males for the Business Services Director position. I was the only Hispanic Male to be interviewed, the three other candidates were white females. Human Resources also provided interview procedures for Mr. Nichols to follow, which he did not.

C. On or about September 11, 2017, Mr. Nichols and Ronald Fasano, Human Resource Analyst, called me into the office to discuss the results from the interview process. I was then informed that I was not the most qualified for the position and they had offered the position to two white females, with the second one accepting the position.

D. On or about September 14, 2017, I was called into a meeting by Mr. Nichols and Mr. Fasano. Mr. Nichols stated that would be my last day because "staff needed to heal" before the new Director started.

E. I believe and therefore allege that Respondent discriminated against me because of my race and gender.

| I want this charge filed with both the EEOC and the state or local agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my complaint in accordance with their procedures. | Signature of Complainant and Date: <br> *[signature]* 10-27-17 |
|---|---|
| I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief. | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, Day, Year)* <br> Myra Camarena 10/23/17 |

EXHIBIT B



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7003 0500 0002 5072 1800

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4701*
*Washington, DC 20530*

March 14, 2019

Mr. Dennis Enriquez
c/o Phillip A. Austin, Esquire
Attorney at Law
215 N. Robson Rd.
Mesa, AZ 85201

Re: EEOC Charge Against City of Scottsdale
No. 35A201800064

Dear Mr. Enriquez:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Phoenix District Office, Phoenix, AZ.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Phoenix District Office, EEOC
    City of Scottsdale